No. 20-1730

# IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

_____

ANNAKUTTY JOSEPH,

*Plaintiff-Appellant,*

v.

TARGET STORES, INC. a/k/a Target Corporation,

*Defendant-Appellee.*

_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

_____

*Amicus Curiae* Brief of the Virginia Trial Lawyers
Association in Support of Plaintiff-Appellant
(and In Support of Reversal of the District Court's
Summary Judgment)

_____

Mary Lynn Tate
TATE LAW PC
Post Office Box 807
16006 Porterfield Highway
Abingdon, Virginia 24212
Telephone: (276) 628-5185
Facsimile: (276) 628-5045
mltate@tatelaw.com

Roger T. Creager
The Creager Law Firm, PLLC
1500 Forest Avenue, Suite 120
Richmond, Virginia 23229
Telephone: (804) 747-6444
Facsimile: (804) 747-6477
rcreager@creagerlawfirm.com

*Counsel for Amicus Curiae Virginia Trial Lawyers Association*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. iii

CORPORATE DISCLOSURE STATEMENT ....................................... 1

STATEMENT REGARDING CONSENT TO FILE ............................... 2

STATEMENT REQUIRED BY FED. R. APP. P. 29(a)(4)(E) ................ 3

STATEMENT OF IDENTITY AND INTEREST OF *AMICUS CURIAE*
AND SOURCE OF ITS AUTHORITY TO FILE ................................... 4

STANDARD OF REVIEW ................................................................... 7

    A.   Review of the grant of summary judgement is de novo ........................ 7

    B.   Numerous standards must be met in "scrupulous" review of the
       record. ........................................................................................ 7

    C.   Plaintiff's evidence is assumed credible and truthful as forecast
       with all justifiable favorable inferences. ...................................... 9

    D.   The burden of proof must be considered and plays an important
       role. .......................................................................................... 10

    E.   Summary judgment is seldom appropriate on issues of negligence
       and contributory negligence. ..................................................... 10

    F.   Virginia law governs Target's duties and its defense. .................. 11

ARGUMENT .................................................................................... 13

    A.   The Ruling on Contributory Negligence Was Wrong and
       Illustrates the District Court's Extreme Departure From
       Governing Standards. ............................................................... 13

    B.   The Ruling That There Was No Evidence of Target's Negligence
       Was Also Wrong and Also Departed from the Governing
       Standards. ................................................................................ 21

i

C.    Virginia Law Charges Target, as Creator of the Hazard, With Notice.................................................................................................26

CONCLUSION .........................................................................................28

CERTIFICATE OF COMPLIANCE.......................................................29

CERTIFICATE OF SERVICE ................................................................30

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................................6, 8

*Appalachian Power Co. v. La Force*, 214 Va. 438, 201 S.E.2d 768 (1974)...........11

*Austin v. Shoney's, Inc.*, 254 Va. 134, 486 S.E.2d 285 (1997) .........................12, 26

*Celotex Cmp. v. Cotrell*, 477 U.S. 317 (1986)...........................................................8

*Charbonnages De France v. Plaintiff*, 597 F.2d 406 (4th Cir. 1979) .....................9

*Colonial Stores v. Pulley*, 203 Va. 535, 125 S.E.2d 188 (1962) ............................11

*Deshotel v Wal-Mart Louisiana L.L.C.*, 850 F.3d 742 (5th Cir. 2017) ..................27

*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)..............................................................11

*Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954 (4th Cir. 1996)....................7

*Fultz v. Delhaize*, 278 Va. 84, 677 S.E.2d 272 (2009) ...............................11, 18, 20

*Gooden v. Howard County, Md.*, 954 F.2d 960 (4th Cir. 1992).................................10

*Hunt v. Cromartie,* 526 U.S. 541 (1999) ...................................................................9

*Knight v. Moore*, 179 Va. 139, 18 S.E.2d 266 (1942) ..............................................11

*Little Creek Inv. Corp. v. Hubbard*, 249 Va. 258, 455 S.E.2d 244 (1995)..............18

*MLC Auto., LLC, v. Town of S. Pines*, 532 F.3d 269 (4th Cir. 2008).......................7

*Maracich v. Spears*, 675 F.3d 281 (4th Cir. 2012) ...................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...............8

*Memco Stores, Inc. v. Yeatman*, 232 Va. 50, 348 S.E.2d 228 (1986)....11, 12, 26, 27

*Plaintiff v. Va. Commonwealth Univ.*, 84 F.3d 672 (4th Cir. 1996).........................9

*Rose v. Jaques*, 268 Va. 137, 597 S.E.2d 64 (2004)...........................................16, 17

*Small v. WellDyne, Inc.*, 927 F.3d 169 (4th Cir. 2019) ..............................10, 16, 17

*Smith v. Ozmint*, 578 F.3d 246 (4th Cir. 2009)............................................. 10

*Suffolk v. Hewitt*, 226 Va. 20, 307 S.E.2d 444 (1983)...............................................18

*Tazewell Supply Co. v. Turner*, 213 Va. 93, 189 S.E.2d 347 (1972)......................11

*West v. L. Bromm Baking Co.*, 166 Va. 530, 186 S.E. 291 (1936)..........................16

*Williams v. Staples, Inc.*, 372 F.3d 662 (4th Cir.2004)...............................................9

## CONSTITUTION AND STATUTES

U.S. Const. Amend. VII......................................................................4

Va. Const. Art.I, § 11 ........................................................................4

## RULES

Fed. R. App. Proc. 29.................................................................1, 2, 3, 6

Fed R. Civ. P. 56 .........................................................................7, 8

Fourth Circuit Local Rule 26.1 .................................................................1

## OTHER AUTHORITIES

11 Moore's Federal Practice - Civil § 56.25 (2020) ...................................... 10

Paul W. Mollica, "Federal Summary Judgment at High Tide," 84 Marq. L.
    Rev. 141 (Fall 2000) ...........................................................5

Suja A. Thomas, "Why Summary Judgment Is Unconstitutional," 93 Va. L.
    Rev. 139 (March 2007)...........................................................5

United States Courts, Statistics and Reports for 2019, Table C-4A, published
    at  *https://www.uscourts.gov/sites/default/files/data_tables/
    jb_c4a_0930.2019.pdf* ...........................................................5

## <u>CORPORATE DISCLOSURE STATEMENT</u>

The Virginia Trial Lawyers Association ("VTLA") is not a corporation but instead is an association.   Therefore, a corporate disclosure statement is not required and has not been filed with this *Amicus Curiae* Brief.   *See Fed. R. App. Proc.* 29(4)(A) and Fourth Circuit Court of Appeals Local Rule 26.1.

## <u>STATEMENT REGARDING CONSENT TO FILE</u>

In accordance with Rule 29 of the *Federal Rules of Civil* Procedure, the VTLA, by its undersigned counsel, hereby states that the parties to the appeal have been informed of the intended filing of this Brief *Amicus Curiae*. The VTLA further states that counsel for all parties (i.e., Joseph's counsel and Target's counsel) have given consent to the filing of an *Amicus Curiae* Brief by the VTLA. Therefore, the filing of this *Amicus Curiae* Brief is authorized by Rule 29(a)(2) of the *Federal Rules of Appellate Procedure* and leave of Court is not required.

## STATEMENT REQUIRED BY *FED. R. APP. P.* 29(a)(4)(E)

In accordance with *Fed. R. App. P.* 29(a)(4)(E), the VTLA states:

a)  no counsel for any of the parties in this case authored the VTLA's *Amicus Curiae* Brief in whole or in part;

b)  no party and no counsel for any of the parties in this case contributed money that was intended to fund preparing or submitting the VTLA's *Amicus Curiae* Brief;

c)  no person—other than the VTLA, its members, or its counsel—contributed money that was intended to fund preparing or submitting the VTLA's *Amicus Curiae* Brief.

## STATEMENT OF IDENTITY AND INTEREST OF *AMICUS CURIAE* AND SOURCE OF ITS AUTHORITY TO FILE

VTLA is an organization of over 1,900 Virginia attorneys dedicated to promoting professionalism within the trial bar, enhancing the competence of trial lawyers, protecting and preserving individual liberties and access to justice, and supporting an efficient and constitutionally sound judicial system. As such, VTLA has serious interest in the issues which are the subject matter of this case. VTLA has no interest in the outcome of this case other than furtherance of its aforementioned purposes and the public interest.

The Plaintiff/Appellant Annakutty Joseph (Joseph), a person who slipped, fell, and was injured in a retail store operated by Target Stores, Inc. ("Target), was denied a jury trial of her negligence claim and her case was dismissed on a motion for summary judgment. Viewed in one manner, this case implicates only the rights of one injured plaintiff and one corporate defendant. In an important way, however, the use of summary judgment procedure by the District Court to dispose of this case implicates the rights of all plaintiffs to present their cases to and have their cases decided by a jury in accordance with the rights guaranteed under the United States and Virginia Constitutions. *See U.S. Const. Amend.* VII; *Va. Const.* Art. I, § 11.

VTLA is deeply concerned that the steadily increasing use of summary judgment has denied and continues to deny more and more litigants their day in court. Over 8 percent of all pending civil cases made it to trial in 1973. Paul W.

Mollica, "Federal Summary Judgment at High Tide," 84 *Marq. L. Rev.* 141, 141 (Fall 2000) (citing judicial statistics). This level of trial adjudications was already low, but in the ensuing years <u>the constitutional right to jury trial has gradually become largely a theoretical right—a right which purportedly still exists but which is almost never vindicated by an actual jury trial</u>.

By the year ending September 30, 2019, of a total of <u>253,878</u> federal civil cases nationwide terminated <u>a jury trial was held in only 1,570 cases</u>. Only 658 cases were tried by the District Court. <u>Only 0.7 percent of the cases reached trial.</u> *See* United States Courts, Statistics and Reports for 2019, Table C-4A, published at *https://www.uscourts.gov/sites/default/files/data_tables/jb_c4a_0930.2019.pdf*.

<u>The nearly complete extinction of jury trials is fully evident in the District Courts within the Fourth Circuit Court of Appeals.</u> For the year ending September 30, 2019, <u>from a total of 58,448 civil cases only 99 cases were tried to a jury</u> and only 66 cases were tried by the district court. The percent of cases reaching trial by jury or by the court was 0.3 percent. *See id.*

Although there are numerous factors that have contributed to this decline, it is clear that the increasing use of summary judgment procedures is a major factor. *See*, *e.g.*, Suja A. Thomas, "Why Summary Judgment Is Unconstitutional," 93 *Va. L. Rev.* 139, 140-141 (March 2007) (citing studies and legal literature).

The unabashed and escalating enthusiasm for summary judgment seems remarkable in view of the fact any error in its use to dispose of a case violates the fundamental right to trial by jury.  The dangers of erroneous use of summary judgment are heightened because how a district court decides the issues raised by a summary judgment motion has long been a subject of great controversy and lack of clarity.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257-58 (1986) (Justice Brennan stating in dissent that "the Court's analysis is deeply flawed, and rests on a shaky foundation of unconnected and unsupported observations, assertions, and conclusions"); 477 U.S. at 269 (1986) (Justice Rehnquist, joined by Chief Justice Burger, stating in dissent that "[i]nstead of . . . illustrating how the rule works, it [the Court] contents itself with abstractions and paraphrases of abstractions, so that its opinion sounds much like a treatise about cooking by someone who has never cooked before and has no intention of starting now").

Truly, then, what is at stake in this case and in every other case where a case in which trial by jury is demanded is disposed of by summary judgment, is the constitutional right of every citizen to have his or her case tried to a jury.  For that reason, the VTLA has a vital interest in the outcome of this matter and seeks leave to file its proposed *Amicus Curiae* Brief in this matter.

The authority for the VTLA to file its *Amicus Curiae* Brief is set forth in *Fed. R. Civ. P.* 29(a)(2) which provides that a brief *amicus curiae* may be filed without leave of court when all parties consent to the filing of such a brief.

## STANDARD OF REVIEW

**A.      Review of the grant of summary judgement is de novo.**

The Court reviews the district court's grant of defendant's motion for summary judgment under Fed R. Civ. P. 56 de novo. *Maracich v. Spears,* 675 F.3d 281, 291 (4th Cir. 2012).

**B.      Numerous standards must be met in "scrupulous" review of the record.**

The standards governing the application of a grant of summary judgment are specific, extensive and must be applied comprehensively. They include 1) finding no existing issues of material fact, 2) the absence of weight and credibility determinations by the court of  the evidence presented, 3) applying all favorable inferences on behalf of the non-moving party, 4) an assumption of the truth and credibility of the evidence presented by the non-moving party, 5) a "scrupulous" and exhaustive review of the record, and 6) giving the nonmoving party the benefit of all favorable legal theories. *Evans v. Tech. Applications & Serv. Co.,* 80 F.3d 954, 959 (4th Cir. 1996).

"Only after a ***scrupulous review of the entire record***," may the district court find that no reasonable jury could return a verdict for the non-moving party. *Evans v. Tech. Applications & Serv. Co.,* 80 F.3d 954, 959 (4th Cir. 1996). The ***burden*** is on the moving party to establish either the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. *MLC Auto., LLC, v. Town of S. Pines,* 532 F.3d 269, 273, 281(4th Cir. 2008).

7

As provided by *Fed. R. Civ. P*. 56(c)(2), summary judgment should be granted only "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to ***any material fact*** and that the movant is entitled to judgment as a matter of law."

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c); Celotex Cmp. v. Cotrell,* 477 U.S. 317, 321 (1986). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Id.* Once the moving party has met that burden, the nonmoving party must then affirmatively demonstrate that there is a genuine issue of material fact that requires trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To raise a genuine issue of a material fact sufficient to avoid summary judgment, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This determination must apply the other standards listed in this brief including credit for truth, veracity, and favorable inferences, without the court's personal view of the weight and credibility of the evidence.

**C.     Plaintiff's evidence is assumed credible and truthful as forecast with all justifiable favorable inferences.**

When making the summary judgment determination, the evidence and all reasonable inferences must be viewed in the light **most favorable** to the nonmoving party. *Plaintiff v. Va. Commonwealth Univ.,* 84 F.3d 672, 675 (4th Cir. 1996) (en banc).

On appeal the court will review the evidence in the light most favorable to Plaintiff. *Id.* In this context, the district court's grant of summary judgment to defendant must reflect that it ***believed*** Plaintiff's evidence and drew ***all justifiable inferences*** in her favor. *Id. (*citing *Hunt v. Cromartie,* 526 U.S. 541, 552 (1999).

In doing so the district court ***must not*** make "credibility determinations or weigh[ed] the evidence." *Williams v. Staples, Inc.,* 372 F.3d 662, 667 (4th Cir.2004). Plaintiff is entitled "to have the credibility of her evidence as forecast assumed, her version of all that is in dispute accepted, all internal conflicts in it resolved favorably to her, the most favorable of possible alternative inferences from it drawn in her behalf; and finally, to be given the ***benefit of all favorable legal theories*** invoked by the evidence so considered." *See Charbonnages De France v. Plaintiff,* 597 F.2d 406, 414 (4th Cir. 1979).

9

**D.    The burden of proof must be considered and plays an important role.**

As to those elements on which it bears the burden of proof, . . . [the moving party] is only entitled to summary judgment if the proffered evidence is such that a rational factfinder could only find for the government."  *Smith v. Ozmint*, 578 F.3d 246, 250 (4th Cir. 2009) (citing *Gooden v. Howard County, Md*., 954 F.2d 960, 971 (4th Cir. 1992) ("[W]here . . . the movant would have the burden of persuasion at trial, the summary judgment burden is a correspondingly heavy one.")).

**E.    Summary judgment is seldom appropriate on issues of negligence and contributory negligence.**

As noted by a leading treatise on federal practice, issues of negligence and contributory negligence are especially unsuited to determination on a motion for summary judgment.  The treatise states:

> [W]hether a party was "negligent" is a kind of ultimate fact. In deciding this "fact," historical facts are applied to legal standards to reach an outcome-determinative conclusion. However, as also noted, the determination of "negligence" is usually reserved for the special expertise of juries . . . .  Therefore, it is no surprise that many courts have stated that issues of "negligence" (and subsidiary issues such as "reasonableness," "due care," or "proximate cause") require determination by a jury. These issues are not, in most cases, suitable for resolution on summary judgment.

11 *Moore's Federal Practice* - Civil § 56.25 (2020) (footnotes omitted) (citing extensive authorities, including *Small v. Welldyne*, Inc., 927 F.3d 169, 173 (4th Cir. 2019)).

10

**F.    Virginia law governs Target's duties and its defense.**

Virginia law governs this diversity case. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). Under Virginia law, a business invitee (such as Joseph) has the **right to assume that the business owner has made the premises reasonably safe for her visit.** *Tazewell Supply Co. v. Turner*, 213 Va. 93, 189 S.E.2d 347 (1972); *Appalachian Power Co. v. La Force*, 214 Va. 438, 201 S.E.2d 768 (1974). The business "visit" here involves a store in which invitees are invited to look at products by looking from side to side and high and low as shelving and displays are arranged by the inviter. "In the absence of knowledge or warning of danger, . . .**[the business invitee] is not required to be on the lookout for it.**" *Knight v. Moore,* 179 Va. 139, 146, 18 S.E.2d 266, 270 (1942) (citations omitted). *Fultz v. Delhaize,* 278 Va. 84, 88, 677 S.E.2d 272, 274 (2009).

In carrying out its duty, "a business is required to … warn the customers of unsafe conditions if they are unknown to the customers, but are known, or ***should have been known by the business***." *Memco Stores, Inc. v. Yeatman,* 232 Va. 50, 348 S.E.2d 228 (1986) (quoting *Colonial Stores v. Pulley*, 203 Va. 535, 125 S.E.2d 188 (1962)).

Furthermore, even if the evidence fails to show that the business owner knew or should have known of the unsafe condition that caused the plaintiff's injury, when the actions of a business owner or its employees create the unreasonably dangerous

11

condition the business owner "**is charged with constructive knowledge of the risk because it 'had a duty to exercise reasonable care to avoid the genesis of the danger.'"** *Austin v. Shoney's, Inc*., 254 Va. 134, 139, 486 S.E.2d 285, 288 (1997) (quoting *Memco Stores, Inc. v. Yeatman*, 232 Va. at 55, 348 S.E.2d at 231)).

## ARGUMENT

**A.     The Ruling on Contributory Negligence Was Wrong and Illustrates the District Court's Extreme Departure From Governing Standards.**

The District Court's treatment of Target's contributory negligence defense departed so widely from the governing legal standards that it taints all aspects of the District Court's decision. The District Court was required by the governing legal standards to view all evidence in the light most favorable to Joseph. Instead, the Court, from the very beginning of its opinion, improperly viewed the evidence in a manner that was adverse to Joseph and favored Target. The Court's analysis began with the statement that the "Plaintiff <u>admitted</u> that she did not see the puddle before her fall[.]" Trial Court Doc. [hereinafter cited as "Doc.] 78 at 1 (all emphasis in this brief is added to the original quoted material). A fair treatment of the facts would have recognized that <u>Joseph's testimony that she did not see the puddle was not an "admission" but instead was actually part of the evidence which affirmatively established Target's liability and Target's failure to meet its burden of proving contributory negligence</u>.

The evidence clearly showed that Joseph did not see the puddle because the clear liquid on the white floor could not be seen unless and until the surface of the floor was closely examined with the specific purpose of finding the cause of a fall. Craig Shipman, a Target employee who came to the scene, testified (and the jurors would have had the right to infer from their common experience) that "it's just hard

13

to see water" on a white floor.  A474.  He also described this difficulty in even stronger terms – i.e., "**very hard**."  A474.  Although the numerous Target employees in the store all were supposedly told by Target "to watch out for wet floors" (A468), neither they nor any other witness testified that they had seen the water until after they learned that Joseph had slipped and fallen on that specific area.

Due to the puddle's size (two feet by seven feet) and the length of time it obviously would have taken drips of water from the ceiling to create a puddle that size, Target and its employees, who had a duty to inspect for leaks on the floor inspect and to provide premises which were safe and who knew that the roof leaked when it rained, should have seen it.  Their failure to see it is not only evidence of Target's negligence, and it is also evidence which shows that a reasonable invitee (who had no right to assume the premises were safe) would not have seen it (and certainly was not negligent as a matter of law for failing to see it).

The District Court noted that "Plaintiff and the Target employees could see the puddle when they looked" and on this basis the District Court stated that it "finds that the puddle was 'open and obvious' and that Plaintiff failed to exercise reasonable care for her own safety."  Doc. 78 at 7.  Again, the departure from governing standards is glaring (and is even highlighted by the Court's own use of fact-finding language).

14

Joseph testified that she could <u>not</u> see the water on the floor. "You couldn't even tell there is water, just like this on the shiny floor. It's a white floor, whitish floor. You couldn't even recognize the water." A362. She testified that she could not see it "until I really looked for it." *Id.* The Target employees agreed that it was "very hard" to see water on a white floor. A474. The Target employees only saw the puddle when they were called to the area to examine the floor to determine the cause of the fall after they knew it had occurred. A474 (the "[leak] was discovered from the slip"), A489 (same). The District Court, viewing the evidence through an erroneous inversion of the proper summary judgment lens, somehow concluded that the water was "open and obvious" **because it was possible**, **after the fall had occurred**, **for a person who was looking for the cause of the fall**, **that the person knew had occurred in that precise area**, to see the water. Quite the contrary, viewed in the proper manner, the testimony shows that the water on the floor was <u>not</u> "open and obvious"—instead the undisputed evidence showed that it was so difficult to see that it was not seen by anyone until after the fall, only then by means of an inspection of the area of the fall for the cause of the fall, and clear water on the white floor was "very hard" to see."

The District Court not only violated summary judgment standards, it failed to adhere to Virginia law governing contributory negligence and erroneously failed to consider that Target had the burden of proof on its defense. This Court recently

reversed a summary judgment which was granted against a plaintiff on the basis that she should have seen a dangerous condition. Although the case involved contributory negligence under North Carolina law, the principles applied by this Court's decision are pertinent to this case as well:

> **Summary judgment is rarely appropriate for issues of contributory negligence because "the standard used in contributory negligence cases, that of reasonable care, usually requires a jury determination**." . . . [I]n "'borderline cases,' fairness and judicial economy suggest that courts should decide in favor of submitting issues to the jury."

*Small v. WellDyne, Inc*., 927 F.3d 169, 173 (4th Cir. 2019) (quoting decisions).

Under Virginia law, Target had the burden of proving that the plaintiff failed to exercise reasonable care <u>and</u> that failure was a proximate cause of the plaintiff's injuries. *Rose v. Jaques*, 268 Va. 137, 149, 597 S.E.2d 64, 71 (2004). Target had the burden to prove both negligence <u>and</u> proximate cause, i.e., that the plaintiff failed to see what she should have seen in the exercise of reasonable care <u>and</u> that she should have seen and realized the dangerous condition at a time such that she should have avoided the injury.

Here, the undisputed evidence regarding the difficulty of seeing the water created a jury issue regarding whether Joseph should have seen the water before she fell. Furthermore, there was no evidence which proved that she should have seen and realized the dangerous nature of the condition of the floor <u>at a time when she could and should have avoided stepping in it</u>. *See*, *e.g.*, *West v. L. Bromm Baking*

16

*Co*., 166 Va. 530, 536, 186 S.E. 291, 294 (1936) ("There is no evidence which tends to show that Shorter saw the truck in time to have saved himself, therefore the [contributory negligence] instruction should not have been given"); *Rose v. Jaques*, 268 Va. at 152, 597 S.E.2d at 72 (even though plaintiff's passenger saw the defendant's truck and screamed that it was approaching the plaintiff's car, the trial court properly stuck the contributory negligence defense where the evidence failed to show that the plaintiff should have seen it in time to avoid the collision).

The District Court improperly engaged in fact-finding when it ruled that the hazard was "open and obvious" merely because the water could be seen after Joseph had fallen on the floor by people who were specifically examining the condition of the floor looking for the cause of the fall. Once again, the District Court improperly viewed the evidence strongly against Joseph. Viewed in the manner mandated by the summary judgment standards, the evidence that the water could be seen upon specific, focused examination of the area after it was known to have caused Joseph to slip and fall by no means proved that it was "open and obvious" and should have been seen by Joseph <u>before the fall</u>. If that were the case, a plaintiff would almost never prevail since almost all dangerous conditions can be seen upon that type of focused examination after an area is known to have caused someone to clip and fall.

And as a legal matter, Virginia case law clearly establishes that whether a dangerous condition is "open and obvious" and should have been seen before the fall

are questions for the jury to decide – under Virginia law this is true even if it is undisputed that the dangerous condition could be seen upon examination after the fall. The Supreme Court of Virginia has made clear: "[W]e have specifically declined to hold that, as a matter of law, a pedestrian's failure to look down while stepping forward necessarily constitutes contributory negligence in every case." *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 90, 677 S.E.2d 272, 275 (2009) *See Suffolk v. Hewitt,* 226 Va. 20, 28, 307 S.E.2d 444, 449 (1983) (woman opened door, "<u>failed to look down before stepping forward</u>," and fell down stairs; whether "the dangerous condition was open and obvious" to the plaintiff presented "a jury question"); *Fultz v. Delhaize Am., Inc*., 278 Va. at 89, 677 S.E.2d at 275 (bank customer tripped over a metal bar which was visible next to an ATM machine; the Virginia Supreme Court held that <u>even "assuming the metal bars constituted an open and obvious dangerous condition</u>," whether the plaintiff was guilty of contributory negligence was for the jury to decide based "upon the circumstances of the particular case"); *Little Creek Inv. Corp. v. Hubbard*, 249 Va. 258, 264, 455 S.E.2d 244, 248 (1995) (pedestrian who tripped on a muffler on the sidewalk admitted she failed to look down; a witness testified that <u>the muffler " 'was out there in plain view' on the sidewalk</u>," the Supreme Court of Virginia held that <u>the issue of contributory negligence was for the jury to decide</u>).

18

Target contended, and the District Court erroneously believed, that the evidence proved as a matter of law that Joseph walked blindly ahead and failed to exercise reasonable care for her safety. But that conclusion was not proved at all, and certainly not proved beyond any reasonable dispute, as a matter of law.

The District Court noted Joseph's testimony that she was not looking at the floor and was looking for the store exit. Again, the District Court improperly considered the evidence in the light most adverse to Joseph. Joseph never testified that she <u>never</u> looked anywhere other than towards the store exit and she never testified that she <u>never</u> made any observation of the area ahead of her as she walked along the aisle. To the contrary, she testified that when she moved ahead in the aisle she <u>**was**</u> **looking "where she was going," "straight ahead," "like this (indicating)."** A358. The jury clearly had the right to decide that this is exactly the way a reasonable person walks forward in a store aisle—looking straight ahead so that their vision (which includes their peripheral vision of the floor) takes in the entire area (including the walkway) ahead of them. Furthermore, **Joseph had the right to have the jury actually see her demonstration of the lookout she used (*a lookout that the District Court never saw*) and decide whether it was reasonable under all the circumstances**.

Joseph testified that she was not looking **"down" "at the floor"** and was not "**looking [for] anything** on that floor." *Id.*[1] This testimony does not prove that she

---

[1] Joseph was asked: "What did you look <u>for</u>?" A358. The deposition transcript

was negligent. Instead, under Virginia law, a plaintiff is not required to constantly look down at the floor or walkway ahead of them. Instead, a business invitee like Joseph " 'has the right to assume that the premises are reasonably safe for his visit,' and '[i]n the absence of knowledge or warning of danger, . . . is not required to be on the lookout for it.' " *Fultz*, 278 Va. at 89, 677 S.E.2d at 275.

No reasonable person constantly looks downward "at the floor" as they walk through a store. Indeed, it would be negligent to do so, since that type of behavior would result in the person running into persons and objects ahead of them. Joseph was an independent contractor who was working as a facilitator for a marketing event inside the store. A435-436, 427-429. She had no reason to expect dangerous conditions on the floor. She had not encountered any other wet areas. A436. No one and nothing had warned her of any wet areas in the store. A436. Although she testified that she was looking for a store exit, she also testified that she was looking "straight ahead" "like this" as she moved forward. The District Court erred and violated the summary judgment standards when it ruled that Target had proved as a matter of law that Joseph walked blindly ahead, failed to use reasonable care, and negligently caused her own injuries.

---

gives her answer as: "I'm not looking anything on that floor." A358, Joseph Dep. at 70. In view of the context of the question that was posed, a fair reading of her testimony is that she was not "looking for anything on that floor." It was entirely reasonable for Joseph to not be looking for anything on the floor. In the absence of any warning, she had the right to assume the premises were safe.

**B.    The Ruling That There Was No Evidence of Target's Negligence Was Also Wrong and Also Departed from the Governing Standards.**

In the District Court, Joseph presented jury-submissible evidence to support three theories (each of which was sufficient to create a case for the jury) of Target's negligence.  The first ground of negligence was that the Target employees (who knew the roof leaked when it rained and had been told to be on the lookout for water on the floor) were negligent when they failed to discover the water that gradually dripped from the roof for long enough to produce what eventually became a two-foot by seven-foot puddle of water in which Joseph slipped and fell.  The second ground of negligence was that Target had actual knowledge of the dangerous condition of its premises – roofing that leaked whenever it rained and dripped water onto the walkways used by invitees – and failed to use reasonable care to remedy and prevent this dangerous condition but instead allowed it to continue.  The third ground of Target's negligence was that a door to an HVAC unit on the roof had been left open after a repair and that negligently caused or contributed to the leak.  There was sufficient evidence to support all of these negligence theories.

Target's own witnesses stated that the puddle had been created by water dripping from the ceiling.  There was no evidence of any condition that would have caused the puddle to be created suddenly and quickly; instead, all the evidence indicated the large puddle was the result of the gradual accretion of water dripping from the roof throughout the numerous hours of the rainstorm.

21

Plaintiff produced sufficient evidence to create a question of fact as to Target's knowledge that recurring roof leaks into the store aisles after heavy rain would cause this hazard. This evidence includes Target's internal Incident Report of Mrs. Joseph's fall and the testimony of at least two Target employees.

Target's internal Incident Report form prepared by Target employee, Kristina Centanni on May 21, 2016 stated that the incident occurred because of "water on floor," "**wet from ceiling**." She notes that Ms. Joseph's clothing was wet and that her "neck and back hurt." The Report form asked if weather was a factor and contained the entry "excessive rain." The Report also said that the water on the floor was "**from excessive rain**" and that the "**ceiling was wet**" and "**had a leak**." (Incident Report, Exhibit B). App. at 559.

In answer to the question, "Can you determine the source of the substance or condition?" The 'yes' box was checked, and Ms. Centanni wrote: "**water from excessive rain**." In the description of "Scene Observations," it is written, "**Rain had leaked through roof and began <u>dripping on ground</u>**. Leak discovered from slip. Area was cleared and has wet floor signs. **Not easy to see water**." *Id.*

The facts here show that the rain began falling on May 21, 2016 at 1:00 am and stopped around 8:35 am. App. 499-500. The store opened at 8:00 am. App. 31. The plaintiff slipped and fell more than 5 hours later at 1:20 pm. App 427. The puddle was formed by drips from the roof leak. App. 428. By 1:20 pm, the puddle

22

had grown to a size of approximately 2 feet by 7 feet and was sufficient to make the plaintiff's clothes "completely wet." App.  435-436; 352. Four Target employees were in the area tasked to periodically inspect the aisles for slipping hazards and failed to detect it. App.  483-484.

Although there was no evidence proving the exact time that the puddle <u>started</u> to form, the evidence showed that the puddle was created by water dripping from the roof, during a rain storm that lasted many hours, the storm had ended numerous hours before Joseph fell, and the puddle had grown to 2 feet by 7 feet in size by the time of Joseph's fall.  The jurors were entitled to use their common sense and to draw the reasonable inference that the water had been present on the flooring for a sufficient length of time prior to Joseph's fall such that it should have been discovered by reasonable inspections by Target employees (who knew the roof leaked and were told to be on the lookout for leaking onto the floor).

In addition to Target's Incident Report, there was testimony that the roof leaked regularly into the store over a six-year period after rainstorms and snowfall. Ms. Centanni, Target's Leader of the Day testified that there were roof leaks after bad weather and there was a need to look out for leaks from the roof.  App. 492-493. Target employee, Craig Shipman, testified that since 2010, employees were told to look out for leaks and puddles on the floor before and after heavy rain and when snow began to melt because the roof was flat.    App.458-459.   Mr. Shipman

discovered Ms. Joseph after her fall. He found her with completely wet clothing having slipped in the puddle that was "not easy to see." His Team Member Witness Statement (part of the Incident Report) said **"water leaking from ceiling formed a puddle"** under the heading "Scene Observations." App. 559.

Joseph also presented expert testimony in support of her contention that Target may have negligently created the leak by allowing a door on an HVAC unit to be left open and to remain open. The District Court rejected this evidence on the asserted ground that it is "apparent that Hawn [the expert] is only speculating that the door may have been left open." Doc. 78 at 6. The District Court made no attempt to actually demonstrate, however, that the expert's opinion failed to satisfy applicable evidentiary requirements. The District Court made no review of the expert's qualifications, the grounds for the expert's opinion, and the details of the opinion. The District Court provided no discussion of the legal standards governing expert testimony.

In finding no constructive knowledge, the District Court failed to scrupulously review all the evidence and reasonable inferences in the light most favorable to Joseph. No consideration was given to the evidence of the history and knowledge of recurrent leaks and puddles in the store as part of the evidence of notice of the hazard. Only this puddle this one day was considered by the District Court. This was an erroneously narrow and adverse view of the evidence of the nature and extent

of Target's notice of the hazard, the foreseeability of the danger, and Target's negligence.

There was extensive evidence of recurrent leaking and puddles under the same circumstances as those presented here. Plaintiff's evidence and the inferences required to be drawn from it show that Target had notice of the hazard for six years. A reasonable jury could easily find for plaintiff under these circumstances. The jury had the right to decide that when Target knew that its roof regularly leaked water onto the floor during rain storms, it was negligent because it failed to take sufficient measures to prevent that dangerous condition, and instead allowed the condition to continue so unaddressed and to remain so unreasonably dangerous that it was able to form a 2 foot by 7 foot puddle of water.

The District Court's decision, if upheld, would erroneously allow business owners to invite persons onto premises that the owners know are likely to be dangerous whenever it rains due to roof leaks, to negligently fail to take steps sufficient to address that known premises defect, to negligently fail to give any warning of the danger to invitees, and then to defend on the basis that the store employees had negligently failed to inspect the premises with sufficient frequency and sufficient care to discover the precise location of the particular wet spot (which had grown to a large size) prior to the invitee's fall.

**C.    Virginia Law Charges Target, as Creator of the Hazard, With Notice.**

Notwithstanding the sufficiency of plaintiff's evidence comprising constructive notice of the hazard, because Target created the hazard, Virginia law charges Target with notice as a matter of law.  Even if it could be determined that the evidence failed to show that Target knew or should have known that its premises were in an unsafe condition that was likely to cause injury, when the actions of a business owner or its employees create the unreasonably dangerous condition the business owner "**is charged with constructive knowledge of the risk** because it 'had a duty to exercise reasonable care to avoid the genesis of the danger.'"  *Austin v. Shoney's, Inc.*, 254 Va. 134, 139, 486 S.E.2d 285, 288 (1997) (quoting *Memco Stores, Inc. v. Yeatman*, 232 Va. at 55, 348 S.E.2d at 231)).

In *Austin v. Shoney's, Inc.,* supra, the Supreme Court of Virginia reversed a summary judgment ruling in a slip and fall case stating that Shoney's had **constructive notice** of the hazard if the jury accepted the plaintiff's theory that the grease-like film on the floor was the result of improper cleaning methods.  *Id*.  The Court stated, "the trial court is not to judge the weight and credibility of the evidence and may not reject any inference from the evidence favorable to the plaintiff unless it would defy logic and common sense."  254 Va. at 138, 486 S.E.2d at 288.

If the jury accepted the plaintiff's theory that the grease-like film was the result of the improper cleaning methods, the hazardous condition was affirmatively created

by the property owner.  Thus, Shoney's was charged with constructive knowledge of the risk because it **"had a duty to exercise reasonable care to avoid the genesis of the danger."** *Memco Stores, Inc. v. Yeatman*, 232 Va. 50, 55, 348 S.E.2d 228, 231 (1986).

Here, Target is the creator of the hazardous condition because it operated the store for invitees knowing of its roof defects and history of leaking.  In fact, the roof leaking was "common knowledge" among its employees. Shipman Dep. p.42. App 381.

Other courts have also applied these principles to leaking roofs. In *Deshotel v Wal-Mart Louisiana L.L.C.*, 850 F.3d 742, 747 (5th Cir. 2017), the plaintiff slipped and fell on water that she contended had dripped from a leaking roof.  There was evidence of various leaks prior to plaintiff's fall when skylights were installed and there were issues of fact as to whether it had rained that day and how long the roof had been leaking.  There was direct testimony that there had been uncorrected persistent leaks for some time prior to plaintiff's fall, as well as on the day of her fall. The Fifth Circuit Court of Appeals held that the district court erred in granting summary judgment in favor of the store owner.

## <u>CONCLUSION</u>

The Virginia Trial Lawyers Association believes it is critically important that the right to jury trial must not be eroded by the erroneous use of summary judgment practice and procedures. The VTLA believes that occurred in this case and asks that the Fourth Circuit issue an opinion which reaffirms the fundamental importance of careful adherence to all of the summary judgment standards and principles reviewed herein.

VIRGINIA TRIAL LAWYERS ASSOCIATION

By:      /s/ Mary Lynn Tate
Mary Lynn Tate
TATE LAW PC
Post Office Box 807
16006 Porterfield Highway
Abingdon, Virginia 24212
Telephone: (276) 628-5185
Facsimile: (276) 628-5045
mltate@tatelaw.com


Mary Lynn Tate
TATE LAW PC
Post Office Box 807
16006 Porterfield Highway
Abingdon, Virginia 24212
Telephone: (276) 628-5185
Facsimile: (276) 628-5045
mltate@tatelaw.com

Roger T. Creager
The Creager Law Firm, PLLC
1500 Forest Avenue, Suite 120
Richmond, Virginia 23229
Telephone: (804) 747-6444
Facsimile: (804) 747-6477
rcreager@creagerlawfirm.com

28

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman, 14 point.

2.      Exclusive of the table of contents, table of citations, and certificate of compliance, this Amicus Curiae Brief of the Virginia Trial Lawyers Association contains 6,301 words.

3.      I understand that a material misrepresentation can result in the court's striking the brief and imposing sanctions.      If the Court so directs, I will provide an electronic version of the brief and a copy of the word or line printout.


October 21, 2020

     /s/ Mary Lynn Tate
Mary Lynn Tate
TATE LAW PC
Post Office Box 807
16006 Porterfield Highway
Abingdon, Virginia 24212
Telephone: (276) 628-5185
Facsimile: (276) 628-5045
mltate@tatelaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this October 21, 2020, filed electronically using

the Court's CM/ECF system which will send notification to all parties of record.


_____/s/ Mary Lynn Tate_____
Mary Lynn Tate
TATE LAW PC
Post Office Box 807
16006 Porterfield Highway
Abingdon, Virginia 24212
Telephone: (276) 628-5185
Facsimile: (276) 628-5045
mltate@tatelaw.com